**In re Michael J. PHILLIPS and Aubrey M. Crick.**

**Appeal No. 81–587.**

United States Court of Customs and Patent Appeals.

March 25, 1982.

Alan E. J. Branigan, Arlington, Va., and Thomas L. Peterson, Woodland Hills, Cal., for appellants.

Joseph F. Nakamura, Sol., and Gerald H. Bjorge, Associate Sol., Washington, D. C., for the Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejection under 35 U.S.C. § 103 of claims 1--3, 7, and 8 in appellants' application, serial No. 679,759, filed April 23, 1976, for "Termination of Optical Fibers." We reverse.

### Background

The sheathed optical fiber is the optical analogue of insulated bell wire. In the latter, the copper conductor carries electrons; in the former, a slender filament of transparent material carries photons. Both fiber and wire can convey information in the form of pulsed streams of energy, a fiber being superior for this purpose in that it can transmit more information than can a wire of comparable size and weight.

One crucial distinction between an optical fiber and a wire is that the efficiency of the optical fiber in carrying energy is always extremely sensitive to geometry. Thus, while misalignment of two wires at their junction may negligibly increase its ohmic resistance, a misalignment of optical fiber ends can cause an unacceptably large loss of transmitted energy. Other distinctions are

the fragility of optical fibers which are of drawn glass and the necessity of optically polishing their ends.

Appellants' invention is a sheathed optical fiber "termination" or ending which facilitates proper alignment of an optical fiber end with another fiber or device to which it may ultimately be joined. The termination is comprised of a hollow cylindrical ferrule at one end of which is precisely positioned a bushing in the form of a pierced synthetic jewel such as is commonly used as a watch bearing. To attach the termination to a sheathed optical fiber, one strips the sheath from the end of the fiber, and then inserts sheath and fiber into the open end of the ferrule until the exposed fiber end protrudes through the hole in the jewel in the other end of the ferrule. The sheath is then affixed to the ferrule.

Figure 1 of appellants' application drawing, showing the termination greatly enlarged, is illustrative:

FIG.1.

Ferrule 11, has pierced watch jewel 13 mounted in its end with its center hole 12 coaxial with the ferrule. The optical fiber is 18, carried by sheath 16, part of which has been removed. The sheath end is cemented into the ferrule at 20, the space around the bare fiber being optionally filled with epoxy resin 21 injected through hole 22. The end 17 of fiber 18 is optically finished and is flush with the outer surface of jewel 13. Actual dimensions may be judged from the fact that the ferrule diameter is 1.8 mm.

Claim 1 illustrates the claims on appeal:

1. A sheathed optical fiber termination comprising:

a hollow cylindrical ferrule;

an optical fiber mounted lengthwise in said ferrule and having its sheathing terminating within said ferrule leaving a forward unsheathed end portion of said fiber in said ferrule;

a pierced watch bearing jewel fixedly mounted at the forward end of said ferrule having an aperture therein coaxial with the center axis of said ferrule; and said unsheathed end portion of said fiber being threaded into said aperture.

There are two references. The first is the "Hellermann article" which appeared in the April 1975 issue of *Electronic Engineering.* Entitled "Fibre Optic Connectors," it describes various products of the Hellermann Electronic Components Co., specifically an optical fiber termination having an exposed optical fiber end epoxied within a brass ferrule.

Description of the second "reference" requires partial recapitulation of the prosecu-

tion history of this case. In an Office Action dated June 9, 1977, the examiner cited the Hellermann article and U. S. Patent No. 4,015,894 to Rocton as references. Appellants responded by pointing out that the Rocton patent was not a proper reference because it was filed in this country on November 10, 1975, while appellants claimed the benefit of an application filed in Great Britain on May 6, 1975. In other words, the Rocton *patent* is not "prior art" within § 103. The examiner then required appellants to copy a modification of claim 1 of the Rocton patent for the purposes of provoking an interference under 37 CFR 1.205. The modified claim, with deletions from claim 1 of Rocton in brackets and additions to that claim underlined, is:

A connector for optical fibres having a very small diameter, wherein [two ends] *a fiber* to be connected [are] *is* inserted [on both sides] in a duct crossing through a part made of a synthetic stone basically containing alumina, constituting a connecting part, the diameter of said duct being very close to that of the [fibres] *fiber*.

The subject matter of the Rocton claim will be better understood if considered in connection with his patent drawing, reproduced below, showing a connector consisting of interconnecting sheaths 9 and 12 in which are synthetic watch jewels 10, 8, and 11 which align the ends 3 and 4 of two optical fibers 1 and 2, which abut one another within jewel 8 when the two connector sheaths are positioned one within the other.

The phrase "a synthetic stone basically containing alumina" in Rocton's claim is a patent solicitor's obscure way of describing synthetic ruby or sapphire or the like, commonly used for watch jewels, as the patent makes clear.

Appellants declined to copy the claim. They contended that the requirement to copy was improper because their invention is significantly different from Rocton's, that in their invention the watch jewel is not a "connecting part," so that their disclosure does not support the limitation to a jewel "constituting a connecting part," and, further, that the examiner deleted material limitations from Rocton's claim, contrary to Rule 1.205(a) which permits omission from

claims substantially copied only of *immaterial* limitations. (Compare Rule 1.203(a).)

The examiner found none of these reasons persuasive, and therefore deemed appellants to have disclaimed the subject matter of the modified claim under 37 CFR 1.203.* The examiner then rejected the appealed claims as follows:

Claims [1–3, 7, and 8] are rejected under 35 U.S.C. § 103 as being unpatentable over the Hellermann article in view of the modified claim from Rocton. The Hellermann article discloses an unsheathed fiber epoxied within a ferrule. The article does not disclose using a synthetic stone or watch jewel to align the fiber. The prior art modified Rocton

* While Rule 1.203 on its face appears to relate to interference between applications, whereas a patent and an application are here involved, the disclaimer provision appears to be applicable

here if other conditions are met. *See In re Ogiue*, 517 F.2d 1382, 186 USPQ 227 (CCPA 1975).

claim recites a synthetic stone as the applicants are claiming. It would be obvious to combine these teachings and use a synthetic stone or watch jewel within the ferrule of the Hellermann article to provide fiber positioning.

The board agreed that the requirement to copy the modified claim and treating its subject matter as disclaimed were proper, saying:

The threshold issue is whether the subject matter of the modified claim of Rocton has been disclaimed by the appellants and is, therefore, prior art as to them. In resolving this issue, we must determine, first, whether Rocton and the appellants are claiming essentially the same invention, second, whether the modified claim is supported by Rocton and, third, whether the modified claim is supported by the appellants' disclosure. If the answer to these questions is in the affirmative, then the appellants' failure to copy the modified claim constitutes a disclaimer of that subject matter and makes this subject matter available as prior art against the appellants' claims. *In re Ogiue*, 517 F.2d 1382, 186 USPQ 227 (CCPA 1975).

The board answered all three inquiries in the affirmative, reversed rejections of three claims, and sustained rejections of all the claims here appealed.

## OPINION

Of the three questions asked by the board, two of them cannot be answered in the affirmative, namely, the third and so, necessarily, the first.

The government agrees that the examiner's requirement that appellants copy the modified claim is proper only if their disclosure supports it. We agree as well, and also agree with appellants that their disclosure does not support the modified claim. We therefore hold that requiring them to copy the modified claim was improper. Since appellants' disclosure does not support what the examiner viewed as common subject matter (the modified claim), it follows that Rocton and appellants are not claiming essentially the same invention.

The modified claim calls for "a part made of synthetic stone * * * *constituting a connecting part*." (Emphasis ours.) The solicitor argues that the watch jewel recited in appellants' claims serves the function of a connecting part, saying:

The common threaded pipe union is considered a "connecting part" whether it has one, two or even no (compare appealed claim 7) pipes joined to it. As the Board noted (R–41), appellants' claims do not specify the degree to which a fiber enters or extends into the watch jewel. As far as appellants' *claimed* invention is concerned, the ends of two fibers could be coupled within the watch jewel just as they are in Rocton. [Emphasis ours.]

The phrase "connecting part" means "a part which connects," and nothing else. This is how Rocton meant it in his claims. The jewel 8 in his device connects the optical fibers which meet within it; it unites and axially aligns them. Appellants do not even suggest using a watch jewel as a connecting part, and so their disclosure does not support a claim drawn to embodiments in which a watch jewel is so used, despite the fact that that claims arguably broad enough to *encompass* such embodiments comprise part of the disclosure. This is because original claims, even though part of the disclosure, may be infringed by structures which are not specifically disclosed in the specification of which they are a part. For example, undisclosed species may infringe an adequately supported generic claim. Here, appellants' *claims*, by reason of broad scope, may very well encompass structure which appellants do not disclose, but that does not constitute supporting disclosure for the modified claim. The modified claim cannot be read on their disclosure because their jewel is not disclosed as a "connecting part." It connects nothing to anything and certainly is not disclosed as being adapted to carry out the connecting function shown by Rocton. Appellants do not disclose a connection, only a termination. Accordingly, appellants cannot make

the modified claim. It follows that they are not claiming "essentially the same invention" as Rocton.

The solicitor's analogy to commonly-known plumbing is unpersuasive if not misleading. A pipe union is, indeed, a connecting part but, as shown in Marks' *Mechanical Engineer's Handbook* (5th Ed.) p. 1045, a union is a combination of separable elements (usually 3) two of which are separably connected to two pipe ends which are then connected by a third element, a threaded collar. Appellants' single fiber end termination structure can hardly be analogized to a three-part union.

What appears to have affected the PTO's view of this case is the fact that appellants, like Rocton, hit upon the idea of using readily available watch jewels as the easy way to get a ready-made, small, pierced bushing member for use in their respective inventions. That each uses a watch jewel does not, however, show that they made and disclosed substantially the same inventions.

In view of the foregoing, we need not reach the rest of the solicitor's arguments.

Since the requirement to copy the modified claim was improper because it lacks support in their disclosure, appellants have not disclaimed its subject matter. The modified claim thus cannot be treated as a prior art reference, and the § 103 rejection premised upon it fails. The board's decision sustaining the § 103 rejection is *reversed*.

REVERSED.